Joe Angelo (Bar #268542)
jangelo@gajplaw.com
Gale, Angelo, Johnson, P.C.
2999 Douglas Blvd., Ste. 111
Roseville, CA 95661
916-290-7778 ph
916-282-0771 fax

Attorney for Plaintiff
Marsha Walker

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| Marsha Walker<br><br>    Plaintiff,<br><br> v.<br><br>TransUnion, LLC; Applied Data Finance, LLC<br><br>    Defendants. | CASE NO.   2:25-cv-01188<br><br>COMPLAINT FOR DAMAGES:<br><br>1. Violation of Fair Credit Reporting Act<br>2. Violation of California Consumer Credit Reporting Agencies Act |

COMES NOW Plaintiff Marsha Walker (hereinafter "Plaintiff"), an individual, based on information and belief, to allege as follows:

**INTRODUCTION**

1. This case arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), 15 U.S.C. § 1681e(b), 15 U.S.C. § 1681i(a)(2)(A)), 15 U.S.C. § 1681i(a)(4)), 15 U.S.C. §1681i(a)(5)(A)), and the California Consumer Credit Reporting Agencies Act, California Civil Code §1785.25(a).

2. Plaintiff seeks redress for the unlawful and deceptive practices committed by the Defendants in connection with their inaccurate, misleading, or

incomplete reporting of Plaintiff's account with Applied Data Finance, LLC dba Personify Financial (hereinafter "ADF").

3. Here, ADF continues to report inaccurate and incomplete information regarding Plaintiff's account.

4. ADF's reporting of the account is wholly incomplete and misleading.

5. Specifically, ADF continues to inconsistently report the account as follows – ADF is reporting that Plaintiff's account is charged-off and not disputed rather than listing that the account as included/discharged in bankruptcy.

6. ADF's reporting is inaccurate and incomplete – ADF was notified of Plaintiff's chapter 7 bankruptcy filing but failed to update the status of the account.

7. Such reporting is misleading and adversely impacts Plaintiff's credit worthiness.

8. Plaintiff's credit reports have been disseminated to third parties.

9. Plaintiff's credit has also been damaged as a result of the inaccurate and misleading reporting.

10. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting.  Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system.

11. Creditors know that by deviating from recognized credit reporting standards consumers will have difficulty raising their credit scores and improving their credit worthiness.

## JURISDICTION & VENUE

12. Plaintiff re-alleges and incorporates herein by reference the allegations in each and every paragraph above, fully set forth herein.

13. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1367, and 15 U.S.C. § 1681.
14. This venue is proper pursuant to 28 U.S.C. §1391(b)(1).

## **GENERAL ALLEGATIONS**

15. Plaintiff alleges that each and every Defendant is familiar with credit reporting industry standards and subscribes thereto.
16. Plaintiff alleges that each and every Defendant understands that deviation from credit reporting industry standards can and often does result in denial of credit, higher interest rates, and prompts those making credit decisions to draw a more negative inference from the reported data than if the Defendant reported in accordance with the recognized industry standard.
17. Plaintiff alleges that all actions alleged herein by Defendants were done knowingly, intentionally, and in reckless disregard for credit reporting industry standards in an attempt to purposefully undermine Plaintiff's attempt to improve her FICO Score.
18. In the alternative Plaintiff alleges that the actions of each and every Defendant were the result of reckless policies and procedures that inevitably led to inaccurate, misleading, or incomplete credit reporting.

### **FICO, Inc.**

19. FICO is a leading analytics software company with its principal headquarters located in Montana.
20. FICO has over 130 patents related to their analytics and decision management technology, and regularly uses mathematical algorithms to predict consumer behavior including credit risk.
21. The FICO Score has become the standard measure of consumer credit risk in the United States and is used in ninety percent of lending decisions.

22. A FICO score consists of a three-digit number summarizing a consumer's credit risk or likelihood of repaying a loan. FICO periodically updates its scoring models resulting in multiple FICO Score versions.
23. FICO Scores range from 300 to 850, while industry-specific FICO Scores range from 250-900. A higher FICO Score demonstrates lower credit risk or less likelihood of default.
24. Different lenders use different versions of FICO Scores when evaluating a consumer's credit worthiness.
25. There are 28 FICO Scores that are commonly used by lenders.
26. A consumer's FICO Score is calculated based solely on information in consumer credit reports maintained at credit reporting agencies (CRAs).
27. The three largest CRAs are Experian Information Solutions, Inc.; Equifax Information Services, LLC; and Transunion, LLC.
28. FICO does not control what information is provided in a consumer's credit report. Instead, the scoring models or algorithms are based on the premise that information provided by the CRAs is accurate and complies with credit reporting industry standards.
29. There are five key factors that a FICO Score considers: 1) Payment History, 2) Amount of Debt, 3) Length of Credit History 4) New Credit and 5) Credit Mix.
30. Each of the five factors is weighed differently by FICO.
31. 35% of a consumer's FICO Score relates to payment history, 30% relates to the amount of debt, 15% relates to the length of credit history, 10% relates to new credit, and the last 10% relates to a consumer's credit mix or the different types of debts reported.
32. Payment history refers to whether a consumer has paid their bills in the past, on time, late or missed payments. The more severe, recent, and

frequent the late payment information, the greater the impact on a FICO Score.

33. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently this occurred, and how many delinquent accounts exist.

34. Once a delinquent account has been remedied the longer the account stays current the more a consumer's FICO Score should increase.

35. FICO Scores are entirely dependent upon information provided by data furnishers (DFs) to CRAs.

### e-OSCAR

36. E-OSCAR is the web-based Metro 2 compliant system developed by Experian Information Solutions, Inc.; Equifax Information Services, LLC; TransUnion, LLC and Innovis that enables DFs and CRAs to create and respond to consumer credit disputes.

37. When a consumer sends a dispute letter to a CRA, the CRA then sends an automated credit dispute verification (ACDV) via e-Oscar to the DF.

38. The ACDV contains within it Metro 2 codes next to certain data fields associated with a credit file e.g. "Account Type" "07" (07 in Metro 2 refers to a Charge Account).

### Metro 2

39. The Consumer Data Industry Association is an international trade association representing the consumer credit, mortgage reporting, employment and tenant screening and collection service industries.

40. The credit reporting industry has adopted a standard electronic data reporting format called the Metro 2 format. The Metro 2 format was developed by the CDIA in an effort to universally report debts in a particular manner that is understood to be the most accurate way in which to report a

debt. Specifically, Metro 2 format was designed to allow reporting of the most accurate and complete information on consumer's credit history.

41. The CDIA's Metro 2 format is the credit reporting industry standard for accurate credit reporting.

42. The credit reporting industry at large depends upon Metro 2 and the CDIA's recommendations for reporting debt accurately.

43. The CDIA is *the* expert on accurate credit reporting. In support of her allegations Plaintiff avers the following:

    a. The CDIA offers a FCRA certificate program for all CRAs.
    b. The CDIA offers a FCRA awareness program for all CRAs.
    c. The CDIA offers a FCRA Certificate program for DFs.
    d. The CDIA offers a FCRA awareness program for DFs.
    e. The CDIA offers a Metro 2 Learning system to provide detailed instructions on the use of Metro 2 format to ensure understanding of the reporting guidelines for each field of the Metro 2 Format as well as the relationship between multiple fields.
    f. The CDIA hosts workshops developed and authorized by Equifax, Experian, Innovis, and Transunion.
    g. The CDIA developed a credit reporting resource guide for accurately reporting credit.

44. The CDIA's Metro 2 is accepted by all CRAs.

45. The credit reporting accepted industry standards for reporting Metro 2 accurately are found in the CDIA's credit reporting resource guide (CRRG).

46. The CRRG outlines the industry standards for most accurately reporting debts using Metro 2.

47. The three main credit bureaus helped draft the CRRG.

48. When FICO calculates credit scores the algorithms use Metro 2 information based on industry standards established by the CDIA.

49. The algorithms used by FICO in determining a consumer's credit score are premised on the Metro 2 data received comporting with the CDIA's recommendations for accurate credit reporting.
50. If the Metro 2 data received by FICO deviates from industry standards an inaccurate or incorrect FICO Score results. If the resulting FICO Score is lower a consumer will be considered a higher credit risk resulting in less favorable lending terms.

### Plaintiff's Dispute

51. Plaintiff filed for chapter 7 bankruptcy on January 31, 2024 and received her discharge on May 6, 2024.
52. Defendant ADF was notified of Plaintiff's bankruptcy discharge.
53. After entry of her discharge Plaintiff ordered a credit report from Experian, Equifax, and TransUnion to ensure proper reporting by Plaintiff's creditors.
54. Plaintiff noticed various delinquent and adverse trade lines on her post-discharge credit report.
55. Specifically, ADF was reporting inaccurate and incomplete information regarding Plaintiff's account.
56. ADF was reporting Plaintiff's account as charged-off and that the account was not subject to any bankruptcy proceeding or discharge.
57. In response, Plaintiff disputed the ADF tradeline with Experian, Equifax, and TransUnion via certified mail in July of 2024.
58. Plaintiff's dispute letters specifically put the ADF on notice that the account was not reflecting the bankruptcy discharge and that the CII needed to be updated to accurately reflect the bankruptcy discharge.
59. Plaintiff is informed and believes that each CRA received Plaintiff's dispute letter and in response sent Plaintiff's dispute to ADF via an ACDV through e-OSCAR.

60. In September of 2024 after the statutory time period had elapsed for Plaintiff to receive a reinvestigation report from the credit Bureaus, Plaintiff ordered a second credit report from Experian, Equifax, and TransUnion for the sole purpose to ensure Plaintiff's account with ADF had in fact been updated.

### Inaccuracy –ADF

61. Plaintiff was frustrated to see that Defendant ADF did not properly update the account.
62. ADF was still incorrectly reporting the status of the account.
63. Instead of reporting Plaintiff's bankruptcy ADF continued to report that Plaintiff's account was charged-off.
64. ADF did not report any CII that indicated the account was either included or discharged in bankruptcy.
65. Instead ADF continued to report that Plaintiff was delinquent.
66. ADF's reporting is entirely incomplete, misleading and technically inaccurate.
67. The reporting is incomplete because the report lacks any updates on the account to indicate its status as discharged through bankruptcy.
68. Such reporting remains wholly incomplete and would lead lenders to question whether Plaintiff is still obligated to make payments on the ADF account as it remains charged-off.

### Willfulness

69. This was not a negligent act by Defendant ADF but instead an intentional act to purposefully undermine Plaintiff's ability to effectively restore her credit.
70. ADF's reporting makes Plaintiff appear less credit worthy because the lack of any update on the account makes it appear that Plaintiff still owes ADF

money and that the accounts were not discharged in her bankruptcy proceeding.

71. ADF knows that its reporting must be accurate and complete.

72. ADF, with knowledge of Plaintiff disputes and bankruptcy information, chose not to update Plaintiff's account.

73. ADF's reporting was intentional and done with the purpose of pressuring Plaintiff into making payments on the discharged account in order to remove the derogatory account information.

74. Such a scheme directly undermines the integrity of the credit reporting system at large.

### Damages

75. As a result of the incorrect reporting, Plaintiff has suffered economic loss, diminished credit, and emotional harm.

76. ADF's inaccurate reporting has been transmitted to third parties and negatively impacted Plaintiff's ability to obtain and rebuild her credit.

77. ADF's reporting has diminished Plaintiff's credit score.

78. The actions of TransUnion and ADF as alleged herein are acts in violation of the Fair Credit Reporting Act.

### FIRST CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681e(b))
Against Defendant TransUnion)

**TransUnion, LLC – Failure to Assure Credit Reporting Accuracy.**

79. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

80. TransUnion violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files it published and maintained concerning Plaintiff.

81. Had TransUnion maintained reasonable procedures to assure maximum accuracy TransUnion would never have allowed Defendant ADF to report the account as described herein.
82. Even assuming Equifax is not sophisticated enough to address this obvious contradiction, Plaintiff disputed the account and TransUnion still did not fix the issue.
83. Plaintiffs informed TransUnion that the information reported by ADF was incorrect because Plaintiff provided information regarding the bankruptcy filing.
84. Instead, the account remains unchanged.
85. As a result of TransUnion's violation of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including but not limited to: diminished credit, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

### Willfulness

86. The violations described herein by TransUnion were willful, specifically the Credit Bureaus have intentionally and purposefully set up a system where inaccuracies are not only probable but inevitable.
87. In 2012 the FTC reported that 1 in 5 consumer credit reports contains a material error.
88. Such a finding should shock the conscience.
89. When those errors are disputed TransUnion intentionally send consumer disputes to employees who do not live within the continental United States.
90. This is intentionally done to hide and or subvert a consumer's ability to confront individuals directly responsible for approving accurate reporting.
91. Such a policy also inevitably leads to disputes going unresolved as these employees for Defendant TransUnion receive little to no training concerning how to accurately report consumer debt.

92. Instead, these employees are simply instructed to parrot whatever information a data furnisher provides regardless of whether or not that information is accurate. *See Saez v. Trans Union,* LLC, 621 F. Supp. 2d 1074, 1083, 1088 (D.Or. 2007); *Grigoryan v. Experian Info. Sols.*, Inc., 84 F. Supp. 3d 1044, 1091 (C.D. Cal. 2014); *Haykuhi Avetisyan v. Experian Info Sols.*, No. CV 14-05276-AB (ASX)

93. TransUnion employees are regularly expected to review and approve over 90 disputes per day rendering less than five minutes to review, investigate, and respond to each dispute received.

94. TransUnion has intentionally set up this system in order to undermine, hide, and otherwise frustrate consumers' ability to properly dispute and correct credit reports.

95. TransUnion also allowed ADF to report the account with inaccurate information despite specifically being told in the dispute letter why the reported information was incorrect, inaccurate, and misleading.

96. TransUnion is a member of the consumer data industry association.

97. Despite TransUnion having actual knowledge of Plaintiff's bankruptcy and Plaintiff's own dispute letter referencing the bankruptcy, TransUnion continues to allow ADF to report the accounts as not included/discharged in bankruptcy.

98. Consequently, Defendant TransUnion is liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.

99. In the alternative, TransUnion was at least negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

100. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from TransUnion in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

## **SECOND CAUSE OF ACTION**

(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681s-2(b))
Against All Defendants)

**ADF – Failure to Reinvestigate.**

101. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

102. 15 U.S.C. §§ 1681s-2(b) and 1681i-(a)1 prohibit furnishers from providing any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate or misleading and requires a furnisher to update and or correct inaccurate information after being notified by a consumer reporting agency of a dispute by a consumer.

103. Defendant ADF violated section 1681s-2(b) by failing to conduct a reasonable investigation and re-reporting misleading and inaccurate account information.

104. The CRAs provided notice to ADF that Plaintiff was disputing inaccurate and misleading information, but ADF failed to conduct a reasonable investigation of the information as required by the FCRA.

105. Based on Plaintiff's dispute, ADF should have known that its reporting was incomplete as Plaintiff's dispute letters highlighted the problems with the tradeline and lack of a bankruptcy indicator

106. The most basic investigation would simply involve reading Plaintiff's dispute letters.

107. Plaintiff alleges ADF did not review well established industry standards for credit reporting.

108. If ADF had reviewed such standards, both would have seen its reporting was not in compliance and in accordance with the CRRG and consequently inaccurate and or incomplete.

109. Moreover, had ADF done any investigation whatsoever it would have uncovered that its reporting failed to indicate the account was included/discharged in bankruptcy.
110. ADF received notice of Plaintiff's bankruptcy filing and bankruptcy discharge, in addition to being informed by the CRAs through Plaintiff's dispute letters that the accounts were included/discharged in bankruptcy.
111. The lack of investigation is unreasonable.
112. Plaintiff further alleges that ADF has not properly trained those directly investigating disputes on Metro 2 generally or credit reporting industry standards and as such have developed reckless policies and procedures.

**TransUnion – Failure to Reinvestigate Disputed Information.**

113. Plaintiff re-alleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.
114. After Plaintiff disputed the account mentioned above, Equifax was required to conduct a reasonable investigation and to delete any information that was not accurate under 15 U.S.C. § 1681i-(a)1.
115. TransUnion failed to conduct a reasonable investigation and failed to correct the misleading and/or inaccurate statements on the account within the statutory time frame or at all.
116. TransUnion could not have possibly done any type of reasonable investigation into this matter as Plaintiff explicitly explained that the ADF account failed to identify / report the correct CII.
117. Plaintiff alleges that TransUnion has its own independent duty to conduct a reasonable investigation 15 U.S.C. § 1681i-(a)1.
118. TransUnion is not a passive entity bound to report whatever information a DF provides.

119. Given the aforementioned, Plaintiff allege that TransUnion can and does suppress inaccurate information from being reported when DFs provide inaccurate information.
120. TransUnion can and does instruct DFs on how to properly report certain accounts from time to time upon request from the DF.
121. TransUnion failed to conduct a reasonable investigation because any basic investigation would have included a review of Plaintiff's dispute letters.
122. TransUnion therefore did not do the most basic investigation regarding credit reporting industry standards otherwise the aforementioned would have been uncovered.
123. TransUnion intentionally, willfully or with reckless disregard for Plaintiff's accuracy did no investigation whatsoever given that TransUnion's general policy is to simply parrot whatever information a data furnisher sends.
124. Such policies and procedures inherently lead to inaccurate information being reported and therefore such an investigation is wholly unreasonably and reckless i.e. willful.

### THIRD CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(4))
Against Defendant TransUnion)

**TransUnion – Failure to Review and Consider All Relevant Information.**

125. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.
126. TransUnion violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff.

127. As a result of TransUnion's violation of 15 U.S.C. § 1681i(a)(4), Plaintiff suffered actual damages, including but not limited to, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.
128. The violations by TransUnion were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.
129. In the alternative TransUnion was negligent, which entitle Plaintiff to recovery under 15 U.S.C. § 1681o.
130. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from TransUnion in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

### FOURTH CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(5)(A))
Against Defendant TransUnion)

**TransUnion – Failure to Delete Disputed and Inaccurate Information.**

131. Plaintiff re-alleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.
132. TransUnion violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation.
133. As a result of TransUnion's violation of 15 U.S.C. § 1681i(a)(5)(A), Plaintiff suffered actual damages, including but not limited to, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.
134. The violations by TransUnion were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

135. In the alternative, TransUnion was negligent, which entitle Plaintiff to recovery under 15 U.S.C. § 1681o.

136. Plaintiff are entitled to recover actual damages, statutory damages, costs and attorney's fees from TransUnion in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

## FIFTH CAUSE OF ACTION
(Violation of California Consumer Credit Reporting Agencies Act California Civil Code § 1785.25(a) Against Defendant ADF)

**ADF – Reporting Inaccurate Information to CRAs.**

137. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

138. In the regular course of its business operations, ADF routinely furnishes information to credit reporting agencies pertaining to transactions between Defendants and Defendant's consumers, so as to provide information to a consumer's credit worthiness, credit standing and credit capacity.

139. ADF intentionally and knowingly reported misleading and inaccurate account information to the CRAs that did not follow well-established industry standards.

140. Plaintiff alleges that ADF re-reported the information contained herein in violation of California Civil Code § 1785.25(a).

141. Plaintiff also alleges that ADF had reason to know that the information reported on Plaintiff's account was misleading, inaccurate, and incomplete.

142. Plaintiff alleges that ADF had reason to know that by not complying with well-established industry standards lenders will draw a more negative inference with respect to Plaintiff's credit worthiness.

143. Plaintiff alleges that the dispute letters from all three credit reporting agencies, the consumer data industry resource guide, and results of its

investigation should have provided notice to ADF of its misleading and inaccurate reporting.

144. ADF failed to notify TransUnion that the information Defendant ADF re-reported was inaccurate before the end of 30 business days, in violation of California Civil Code § 1785.25(a).

145. ADF's communications of false information, and repeated failures to investigate, and correct its inaccurate information and erroneous reporting were done knowingly, intentionally, and in reckless disregard for their duties and Plaintiff's rights.

146. ADF both had actual knowledge of the following:
    a. Plaintiff's Bankruptcy Discharge
    b. Plaintiff's Dispute

147. Yet despite the above knowledge ADF did nothing to correct the inaccurate data that was transmitted to the CRAs.

148. As a direct and proximate result of ADF's willful and untrue communications, Plaintiff has suffered actual damages including but not limited to reviewing credit reports from all three consumer reporting agencies, time reviewing reports with counsel, sending demand letters, diminished credit score, denial of credit, and such further expenses in an amount to be determined at trial.

Wherefore, Plaintiff prays for judgment as hereinafter set forth.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rules of Civil Procedure 38, Plaintiff hereby demands a trial by jury for all issues triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1. Award statutory and actual damages pursuant to 15 U.S.C. § 1681n and California Civil Code § 1785.31;

2. Award punitive damages in order to deter further unlawful conduct pursuant to 15 U.S.C. § 1681n; and California Civil Code § 1785.31
3. Award attorney's fees and costs of suit incurred herein pursuant to 15 U.S.C. § 1681n & o; California Civil Code § 1785.31;
4. For determination by the Court that Defendants' policies and practices are unlawful and in willful violation of 15 U.S.C. § 1681n, et seq.; and
5. For determination by the Court that Defendants policies and practices are unlawful and in negligent violation of 15 U.S.C. § 1681o.

**Gale, Angelo, Johnson, P.C.**

Dated: February 12, 2025

*/s/ Joe Angelo*
Joe Angelo
Attorneys for Plaintiff